UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES E. EVANS, | ) |
|            Petitioner, | ) ) ) |
|       v. | ) )  No. 1:19-cv-02984-SEB-MPB |
| WENDY KNIGHT, | ) ) ) |
|            Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of Charles E. Evans for a writ of habeas corpus challenges a prison disciplinary proceeding identified as CIC 19-02-0070. For the reasons explained in this Entry, Mr. Evans' habeas petition must be **denied**.

**A.  Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B. The Disciplinary Proceeding

On February 6, 2019, Lieutenant R. Lowery wrote a conduct report that charged Mr. Evans with Class B offense 215, unauthorized possession of property. The conduct report stated:

> On Sunday 2/3/19 it was discovered that a storage container belonging to staff was missing from the shift office after the sanitation workers had been in the area to clean. On Wednesday 2/6/19 I Lt. R. Lowery was reviewing video from sanitation and noticed Offender Evans, Charles #212234 coming in with the trash from the shift office. He then takes the trash over to the area by the washer and dryer and start going through it. I saw him take the storage container out of the trash can and place it on the sink next to the washer. He then continued to go through the trash removing other items. At no time was he authorized to possess the storage container that belonged to staff.

Dkt. 8-1 (errors in original).

Mr. Evans was screened on February 12, 2019, when he was served with the conduct report and the notice of disciplinary hearing (screening report). Dkt. 8-2. He pleaded not guilty, requested and was provided a lay advocate, and waived 24-hour notice of the disciplinary hearing. *Id.* Mr. Evans declined to request any witnesses, but he requested video of the incident as physical evidence. *Id.*

The hearing officer, Sgt. Pardue, reviewed the video and determined that allowing Mr. Evans to view the video evidence would jeopardize the safety and/or security of the facility. Dkt. 8-6. The hearing officer wrote the following summary:

> I, Sgt. J. Pardue, reviewed the video footage for case number: CIC 19- 02-0070, Video was reviewed for the date of 2/3/19 between 9:00 am until 9:20 am. During the video review offender Evans #212234 can be seen going through the trash. While he is looking in the trash he can be seen removing a hot dog or sausage from the container and placing it in a paper towel. He places it by the mop heads. Evans can then be seen removing a plastic container and setting it on the sink. Offender Evans can then be seen eating the hot dog and the contents of the container. During the video review offender Sadler #950473 can be seen eating the hot dog and salsa also. Offender Hiatt can be seen eating a piece of hot dog.

*Id.*

Sgt. Pardue, the hearing officer, conducted the disciplinary hearing in CIC 19-02-0070 on February 15, 2019. Dkt. 8-5. Mr. Evans' comment was that

> I think it's all retaliation. Chappel called me a soft bitch. We get trash from everywhere. The container was in the trash. I didn't put it in the trash. I did eat it because it was trash. I wasn't hiding it. Nobody took anything from that area.

*Id.*

The hearing officer determined that Mr. Evans had committed offense 215 based on staff reports, Mr. Evans' statement, and video evidence. *Id.* The hearing officer listed the following as the reason for the decision:

> No video in shift office, to determine who took item. Video in sanitation shows Evans taking items out of trash, and consuming them. By definition of B215 Evans had unauthorized possessed these items. Items are to remain in trash unless being sorted.

*Id.*

The hearing officer imposed sanctions of a suspended 30-day loss of earned credit time, a 30-day loss of phone and commissary provisions, and a rescission of 15 days of other earned credit time. *Id.*; dkt. 8-11 at 1. The respondent reports that the 30-day suspended loss of credit time was never imposed, so the only credit time loss was the 15 days. Dkt. 8 at 6.

Mr. Evans' appeals to the Facility Head and to the final reviewing authority were denied. Dkts. 8-7, 8-8, 8-9, 8-10. This habeas action followed.

**C.    Analysis**

Mr. Evans alleges that his due process rights were violated in the disciplinary proceeding. His claims are summarized as the following: 1) failure to follow Indiana Department of Correction (IDOC) policy and procedure; 2) there were errors on the conduct report; 3) a witness statement was relied on that was not requested by Mr. Evans; and 4) equal protection (denial of an impartial decision-maker).

3

The respondent first argues that some of Mr. Evans' claims are barred by procedural default because he did not raise them on appeal. Because Mr. Evans raised eight claims on appeal, rather than attempt to discern which claims were brought on appeal and which were not, the Court finds that it will be more efficient to simply move on to the merits on all the claims brought in his petition. *See Washington v. Boughton,* 884 F.3d 692, 698 (7th Cir. 2018.("Rather than work our way through the maze of these procedural arguments, however, we think it best to cut to the chase and deny Washington's due process claim on the merits.").

1. **IDOC Policy**

Mr. Evans first asserts that the conduct report was not written within 24 hours of the time of the alleged incident and that the staff person who noticed that a storage container was missing should have written the conduct report. He also argues that policy requires a witness to tell the truth or face discipline and that Lt. Lowery lied on the conduct report when he said Mr. Evans entered the sanitation area from the shift office. Relief pursuant to § 2254 is available only on the ground that a prisoner "is being held in violation of federal law or the U.S. Constitution." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015). Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the ones described here, are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process").

### 2. Conduct Report Errors

Mr. Evans contends that the incident actually occurred from 9:00 a.m. – 9:20 a.m., rather than 8 a.m., as noted on the conduct report. The "date of incident" listed on the conduct report is February 6, 2019, because that was the date the video was viewed. Dkt. 1 at 6; dkt. 8-1. Mr. Evans argues that the "date of incident" should be the date that the storage container belonging to a staff member was discovered missing. *Id*. He also asserts that the incident occurred not in the "Lt. Office D-corridor" but was in the sanitation area. *Id.*

The respondent has fairly treated these arguments as Mr. Evans' challenge to receiving proper notice of the charge. A prisoner has a right to notice of the charges against him "in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff,* 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citing *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995)); *Brenneman v. Knight,* 297 F. App'x 534, 537, 2008 WL 4748516 (7th Cir. 2008) (same). "The notice requirement permits the accused to gather the relevant facts and prepare a defense." *Northern,* 326 F.3d at 910.

Here, Mr. Evans has identified no inability to prepare his defense caused by the alleged one-hour discrepancy in the time the incident occurred. As to the date of the incident, the body of the conduct report states that the incident occurred on February 3, 2019, and that the video was reviewed on February 6, 2019, so Mr. Evans was fully informed of what happened when. Similarly, the place of the incident was where the trash was viewed. The fact that the place was listed as where the video was reviewed was inconsequential. Mr. Evans was given adequate notice of the charge and the facts supporting the charge. There was no due process error in this regard.

5

### 3. Unknown Witness

The conduct report states that "it was discovered that a storage container belonging to staff was missing from the shift office after the sanitation workers had been in the area to clean." Dkt. 8-1. The conduct report further states that, "I saw [Evans] take the storage container out of the trash can and place it on the sink next to the washer." *Id*. The video summary states that, "Offender Evans can then be seen eating the hot dog and the contents of the container." Dkt. 8-6.

Mr. Evans alleges that during the hearing, Sgt. Pardue obtained a written statement from a Lt. Durr to show that Lt. Durr had owned the missing container. Dkt. 8-4. Mr. Evans contends that obtaining this statement violated his due process rights and that not knowing the identification of the staff member who noticed his container was missing denied him the opportunity to defend himself from the charge. This claim is not persuasive factually or legally. Mr. Evans admits eating something out of a container that had been in the trash. That is the basis of the charge of unauthorized possession of property. It matters not to whom the container belonged before it ended up in the trash. There is no due process error under these circumstances.

### 4. Equal Protection – Impartial Decisionmaker

Mr. Evans acknowledges that in the video summary, Sgt. Pardue identified two other offenders who also took items from the container and ate them. He alleges that Sgt. Pardue's name appears in the conduct reports of the other two offenders, and that because Sgt. Pardue was a witness in the other disciplinary cases, he was somehow biased in his. *See* dkt. 8-13 at 3; dkt. 8-14 at 3.

A prison official who is "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof," may not adjudicate those charges. *Piggie v. Cotton,* 342 F.3d 660, 667 (7th Cir. 2003). "Adjudicators are entitled to a presumption of honesty

6

and integrity." *Id.* at 666. "[T]he constitutional standard for impermissible bias is high." *Id.* Here, the hearing officer was not involved in the events that occurred in the sanitation room. The fact that the hearing officer saw all three offenders in the video and was a witness in the other offenders' disciplinary cases does not render him partial or biased. Mr. Evans does not contend that Sgt. Pardue was involved in what happened on February 3, 2019, just that he watched video that showed more than one inmate. Sgt. Pardue did not investigate the case against Mr. Evans. Accordingly, any claim of bias is meritless.

Mr. Evans was given proper notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Indeed, Mr. Evans admitted to eating food from a container that had been in the trash. Under these circumstances, there were no violations of Mr. Evans' due process rights.

### D.     Conclusion

For the above reasons, Mr. Evans is not entitled to the relief he seeks. His petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:   5/28/2020

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHARLES E. EVANS
212234
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Courtney Lyn Abshire
courtney.abshire@atg.in.gov

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov